# Illinois Official Reports

## Appellate Court

---

### *People v. Merritt*, 2017 IL App (2d) 150219

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP T. MERRITT, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0219 |
| Filed | August 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, Nos. 09-CF-3074, 09-CF-3092; Hon. Joseph G. McGraw, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, Thomas A. Lilien, and David T. Harris, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Patrick Delfino, Lawrence M. Bauer, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Burke and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant, Phillip T. Merritt, appeals the trial court's summary dismissal of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) in connection with his convictions of armed robbery (720 ILCS 5/18-2(a)(1) (West 2008)). He contends that he stated sufficient claims that he was denied due process when the trial court denied his motion for a continuance after he was allowed to proceed to trial *pro se* and that the court failed to find that consecutive sentences were necessary for the protection of the public. We affirm.

¶ 2                        I. BACKGROUND

¶ 3      Defendant was charged in September 2009 with armed robbery in two separate cases. On January 21, 2011, in case No. 09-CF-3074, the State, without objection from the defense, requested a continuance to obtain a witness. The court reserved ruling on the matter until the following Monday. Defense counsel then informed the court that he would have a couple of motions *in limine* and that defendant also wanted to file a motion for the appointment of substitute counsel. Defense counsel stated that he made a copy of defendant's motion and gave it to the State and that he advised defendant that he would inform the court of it but would not present it in any way. The court said that it would not address the motion that day. It stated that it resolved motions in the order in which they were filed and that there were around three motions ahead of defendant's. The court cautioned defendant to be ready to try the case on the coming Monday. The court later told defendant: "I'll be here on Monday, and we'll resolve the pending motions. And then I'll decide whether or not to address your motion at that time."

¶ 4      On January 24, 2011, the parties appeared in court and multiple motions *in limine* were discussed. On motions from both parties, the case was continued to March 9, 2011, with the trial set for March 14, 2011. Defendant did not ask the court for substitute counsel, and the matter was never discussed. There is no indication that defendant ever filed his motion.

¶ 5      On March 9, 2011, defense counsel informed the court that defendant wished to request the appointment of substitute counsel. Defendant told the court that he "submitted that motion for a substitution of counsel sometime back" and felt that his counsel lacked the proper amount of time to adequately represent him. Defense counsel responded and addressed defendant's concerns. The court declined to appoint substitute counsel, noted that the trial was set for the following Monday, March 14, and stated "[y]our case is going to trial on Monday."

¶ 6      On March 14, 2011, defense counsel informed the court that defendant wanted to present a motion to reconsider his request for the appointment of substitute counsel or in the alternative to proceed *pro se*. Defendant presented a handwritten motion, alleging various deficiencies on the part of his counsel. Before allowing defendant to present his motion, the court stated that a lot of work had gone into the case and that it was the court's top trial-call case for the day. The court then cautioned him, stating: "if it is your intent to attempt to manipulate the Court's schedule and obtain a continuance by going pro se, that won't be effective, just so you know."

¶ 7      Defendant told the court that he first submitted his motion on January 24, 2011, but the court did not hear it until March 9. Defendant described to the court his concerns about his counsel, and the court found that counsel was competent, prepared, and capable. Thus, the court denied the motion to reconsider. Defendant then presented his motion to proceed *pro se*.

During a set of thorough and lengthy admonitions, the court asked defendant if he understood that his ability to investigate, research, and prepare a defense would be hampered. Defendant stated that there were computers in the jail pods, and the following colloquy then occurred:

"THE COURT: Today is the trial day. Today is the day of trial.

THE DEFENDANT: Your Honor, it would be ridiculous for you to force me to go to trial today and not allow me any time to look over all the discovery papers and police reports and whatever, you know. I can't—I can't defend myself today.

THE COURT: Today is the trial day. Today is the day the case is set for trial. If you make this choice in persisting in doing this on your own, you are giving up all the work that's already been done by [defense counsel].

All the research that he has done, all the experience that he brings to bear, all the strategic decisions, all the preparation, you are giving that all up and you are saying that you want to do it, knowing all that; is that what you are saying?

THE DEFENDANT: Yes, if I am allowed some time to—

THE COURT: No. Today is the trial day. You are making the decision today on the trial day.

THE DEFENDANT: That's ridiculous.

THE COURT: You are entitled to your opinion, but that's the reality. The reality is the case is set for trial this morning. It's going to trial today.

If you try and fire him on the morning of trial, it would appear to the Court that that is an attempt to gain a continuance, to thwart the orderly administration of justice.

The case is set for trial. The witnesses are subpoenaed. [Defense counsel] told you that, didn't you [defense counsel]?

[DEFENSE COUNSEL]: Yes, Your Honor, I did, sir.

THE COURT: All right. So, that's the reality. That's the framework we are dealing with. We are not talking about a trial that's set in June. We are talking about a trial that's set today."

The court continued to admonish defendant, who stated that he still wanted to proceed *pro se*. Defense counsel was allowed to withdraw but remain as standby counsel. Defendant was given discovery materials, and jury selection was conducted. Noting that defendant had decided to proceed *pro se* that morning, the court asked if he was ready to give an opening statement or if he wanted to wait until the next morning. Defendant chose to wait until the next day.

¶ 8     In case No. 09-CF-3074, evidence at trial showed that, on September 26, 2009, defendant entered the Title Cash Store in Loves Park, asked about a loan, pulled out a gun, and demanded money. Defendant was apprehended the next day when, after another robbery, he fled from the police in his vehicle, which collided with a house, and then fled on foot. Defendant discarded what appeared to be a semi-automatic gun that was later revealed to be a plastic toy pistol. The State presented evidence from seven witnesses of additional robberies committed by defendant to show *modus operandi*. Defendant provided no evidence. During the trial, standby counsel was allowed to provide assistance on multiple occasions. The jury found defendant guilty, and he was sentenced to 30 years' incarceration. We affirmed on appeal. *People v. Merritt*, 2013 IL App (2d) 120335-U.

¶ 9   In case No. 09-CF-3092, the evidence showed that, on September 25, 2009, defendant entered the Cash Loan Store in Loves Park, asked about a loan, pulled out a gun, used profanity, and told the cashier to give him money. The cashier put the money tray on a table, and defendant demanded that she place the money in his hand. He next demanded additional money. When the cashier told him that there was no more money, he used profanity, called her a liar, shifted the gun from one hand to the other, and began to climb over the counter. The cashier again explained that there was no more money, and defendant told her to lie down on the floor and count. Defendant then left the store. Defendant was found guilty.

¶ 10   At sentencing, the State presented evidence in aggravation that defendant had a substantial criminal history, including nine theft convictions between 1969 and 1984, an armed robbery conviction in 1975, and attempted murder and armed robbery convictions in 1988. He was on parole at the time of the robbery at issue and had committed five other armed robberies while on parole. The State requested an extended sentence and urged the imposition of a sentence consecutive to the sentence in case No. 09-CF-3074. Defendant presented evidence that he was 60 years old and already would not be released until he was over 70 years old. He then asked the court to impose a concurrent 30-year sentence.

¶ 11   The court sentenced defendant to 30 years' incarceration consecutive to the sentence in case No. 09-CF-3074. The court stated that it considered the aggravating and mitigating factors, including defendant's difficult family background and drug abuse. The court said that it did not want to give defendant a life sentence and that it took defendant's request for mercy seriously, but it also noted the evidence in case No. 09-CF-3074 and defendant's lengthy criminal history. The court determined that defendant was likely to reoffend. The court also spoke of deterrence and remarked that the community was "awash in violence and armed robberies" and that defendant contributed to that through a crime wave. It stated that a concurrent sentence would be inappropriate because it would not reflect the seriousness of the offense. The court noted that it could also sentence defendant to an extended term of up to 60 years but that it would not do so. See 730 ILCS 5/5-8-2(a)(2) (West 2008).

¶ 12   Defendant filed a motion to reconsider the sentence, arguing that the consecutive sentence was inappropriate because he was unlikely to be able to complete the first 30-year term and the offense was part of a rash of incidents that took place over a short period. The trial court found that the argument about defendant's age had a certain level of appeal, but it also noted that defendant's recent release from prison was followed by the commission of new offenses. The court stated that it had to consider deterrence and whether another crime wave would be likely to occur. Thus, it denied the motion. Defendant appealed.

¶ 13   In his appeal, defendant did not specifically argue that the trial court failed to find that consecutive sentences were necessary for the protection of the public. However, he argued that imposing the consecutive sentences was an abuse of discretion because the court relied on its personal perception of problems in the community. We affirmed. *People v. Merritt*, 2014 IL App (2d) 120930-U (summary order). We noted that concurrent sentences must be imposed unless consecutive sentences are necessary to protect the public from further criminal conduct by the defendant. However, we observed that the trial court discussed at length defendant's likelihood to reoffend, noting his extensive criminal history and that he reoffended multiple times shortly after his release from prison. Thus, we stated: "[t]he severity of the offense, when coupled with defendant's recidivism, illustrates the need to protect the public, and the court's comments at sentencing show that it made such a finding." *Id.* ¶ 13.

¶ 14    In November 2014, defendant filed a *pro se* postconviction petition. He alleged that he was denied due process when the trial court denied his request for a continuance in order to prepare for trial after electing to proceed *pro se*. He also alleged that the trial court erred in imposing consecutive sentences because the crimes were committed with a toy gun and there were no aggravating circumstances. Finally, he alleged that his appellate counsel was ineffective for failing to raise these issues on appeal. The trial court summarily dismissed the petition, and defendant appeals.

¶ 15                                              II. ANALYSIS

¶ 16    Defendant contends that the trial court erred in summarily dismissing his postconviction petition because he was denied due process when the court denied his request for a continuance and because the court failed to make a finding that consecutive sentences were required in order to protect the public.

¶ 17    The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. Carballido*, 2011 IL App (2d) 090340, ¶ 37 (citing *People v. Jones*, 213 Ill. 2d 498, 503 (2004)). At the first stage, the trial court must review the petition within 90 days of its filing and decide whether it is either frivolous or patently without merit. *Id.* If the court decides that it is either, it must dismiss the petition in a written order. *Id.*

¶ 18    A *pro se* postconviction petition is frivolous or patently without merit when it has no arguable basis in either law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition has no basis in law when it is based on an indisputably meritless legal theory. *Id.* That means that the legal theory is completely contradicted by the record. *Id.* A petition has no factual basis when it is based on factual allegations that are either fantastic or delusional. *Id.* at 17.

¶ 19    Although the postconviction petition must identify the respects in which the defendant's constitutional rights were violated, the threshold for first-stage survival is low. *Id.* at 9. The defendant must set forth only the gist of a constitutional claim, which means that the petition contains enough facts to make out an arguably constitutional claim. *Id.* We review *de novo* a trial court's first-stage dismissal. *Id.*

¶ 20    A claim of ineffective assistance of counsel is assessed under the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Brown*, 236 Ill. 2d 175, 185 (2010). Under the Act, the trial court may not summarily dismiss a petition alleging ineffective assistance of counsel if (1) counsel's performance arguably fell below an objective standard of reasonableness and (2) the defendant was arguably prejudiced as a result. *Id.* The failure to establish either prong of *Strickland* is fatal to the claim. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). Claims of ineffective assistance of appellate counsel are measured against the same standard. *People v. Caballero*, 126 Ill. 2d 248, 269-70 (1989).

¶ 21    Defendant first argues that he presented the gist of a constitutional claim that he was denied due process when the trial court denied his request for a continuance in order to prepare to proceed to trial *pro se*.

¶ 22    "It is well settled that the granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not interfere with that decision absent a clear abuse of discretion." *People v. Walker*, 232 Ill. 2d 113, 125 (2009). "However, '[w]here it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights, a resulting conviction will be

reversed.' " *Id.* (quoting *People v. Lewis*, 165 Ill. 2d 305, 327 (1995)). "Whether there has been an abuse of discretion necessarily depends upon the facts and circumstances in each case." *Id.* There is no mechanical test for determining when the denial of a continuance violates the defendant's right to properly defend his or her case. *Id.* Factors a trial court may consider in determining whether to grant the defendant a continuance include the defendant's diligence, the defendant's right to a fair and speedy trial, and the interests of justice. *Id.* Other relevant factors include whether the defendant was unable to prepare for trial because his or her counsel had been held to trial in another case, the history and complexity of the defendant's case, the seriousness of the charges, docket management, judicial economy, and inconvenience to the parties and witnesses. *Id.* at 125-26.

¶ 23 Defendant relies primarily on *Walker*. There, counsel for a 15-year-old defendant in a first-degree murder case sought a continuance on the date of trial, informing the trial court that she had been mistaken about the trial date and was not ready to proceed. The court, apparently believing that the request was a delay tactic, denied the continuance, stating that " '[t]here isn't a private attorney in the business who hasn't tried to pull something like this.' " *Id.* at 117. The court made no further inquiry or analysis. Applying a plain-error analysis, the supreme court found that the denial was an abuse of discretion. The court noted that the trial court completely failed to exercise its discretion, as the record was devoid of evidence that the trial court considered any relevant factors in denying the continuance. Instead, the trial court, in a colloquy that comprised less than one page of the record, mechanically denied the continuance without engaging in thoughtful consideration of the specific facts and circumstances presented. *Id.* at 126, 129. Nothing in the history of the case showed a pattern of delay by the defendant, and the trial court did not even afford counsel the opportunity to state how long a continuance she sought. *Id.* at 126-27. Further, the defendant had requested a bench trial, which would have been easier to reschedule, the witnesses were local employees of the police department or the State's Attorney's office, and the State did not object to the continuance. *Id.* at 128.

¶ 24 Addressing the State's argument that there was an inference that the motion to continue was a delay tactic, the supreme court explained that it was improper for the trial court to base its ruling on perceived delay tactics by other attorneys in unrelated matters. *Id.* The court stated that, although it had no quarrel with the trial court's underlying sentiment that continuances may not be used as a vehicle for improper delay, there was nothing in the record to suggest such a motivation behind the request. *Id.* The court stressed that, on a request for a continuance of a criminal trial, at issue is not only the trial court's discretion as to whether to grant such a request but also a defendant's constitutional right to a fair, procedurally sound trial. *Id.* at 129. The court held that the error in denying the motion to continue was so serious as to affect the fairness of the defendant's trial and challenge the integrity of the judicial process, regardless of the closeness of the evidence, and thus was plain error. *Id.* at 130.

¶ 25 In *People v. Jefferson*, 35 Ill. App. 3d 424, 426 (1976), the denial of a continuance was also reversed when counsel requested a continuance on the first day that she was appointed and had not been given all of the discovery materials. There, the appellate court noted that counsel must be given a reasonable period of time in which to prepare a defense and that it failed to see under the circumstances how counsel could have been expected to perform the functions necessary to ensure adequate representation. *Id.* at 427; see also *People v. Lott*, 66 Ill. 2d 290, 297 (1977) (the " '[s]peedy administration of justice is desirable, but the desire for speed must not be allowed to impinge upon the constitutional requirement of a fair opportunity to defend' "

(quoting *People v. Shrum*, 12 Ill. 2d 261, 265 (1957))); *People v. Childress*, 276 Ill. App. 3d 402, 413 (1995) (defendant's right to counsel may be limited only where abused, such as by attempts to thwart, delay, or embarrass the effective administration of justice).

¶ 26　　Here, the trial court denied defendant's request for a continuance with little analysis, speaking primarily to its view that the request was a delay tactic and noting that witnesses had been subpoenaed. However, a key difference from *Walker* is also at play. In *Walker*, there was simply no *evidence* that the request was a delay tactic. Here, defendant knew of his upcoming trial and could have sought to proceed *pro se* at an earlier date. Indeed, on January 24, 2011, defendant was told to be prepared to go to trial on March 14, 2011, and he did not raise his concerns about his counsel on that date. He again was told on March 9, 2011, that the trial would be on March 14, 2011, and he did not seek to proceed *pro se* at that time. Instead, he waited until the day of trial to make that request. Thus, the trial court did not abuse its discretion because defendant was not diligent in moving to waive counsel.

¶ 27　　Both the United States and Illinois Constitutions afford a defendant the right to represent himself or herself at trial. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. A defendant's constitutional right to self-representation is as basic and fundamental as the right to be represented by counsel. *People v. Silagy*, 101 Ill. 2d 147, 179 (1984). However, the right to self-representation is not absolute. See *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 24. For example, a defendant's request to proceed *pro se* on the day of trial is untimely when it is accompanied by a request for additional time to prepare. See *Woodson*, 2011 IL App (4th) 100223, ¶ 24; *People v. Rasho*, 398 Ill. App. 3d 1035, 1042 (2010). "[A] defendant cannot await the eve of trial and then, hoping for a continuance, announce that he has decided to rely upon his skills rather than counsel's in presenting his defense. [Citation.]" (Internal quotation marks omitted.) *Rasho*, 398 Ill. App. 3d at 1042. Thus, when the court allows the defendant to proceed *pro se*, it need not grant an extension of time for trial. *People v. Garrett*, 104 Ill. App. 3d 178, 182 (1982).

¶ 28　　In *Rasho*, defense counsel obtained multiple continuances based on the defendant's desire to obtain additional information and documentation. On the day of trial, counsel informed the court that the defendant had indicated that he wanted to proceed *pro se*. The defendant then told the court that he had filed a written motion two weeks earlier and indicated that there were witnesses whom counsel had not interviewed. Without inquiring whether the defendant knowingly and intelligently waived his right to counsel, the court denied the defendant's motion, on the basis that it was untimely and a delay tactic. *Rasho*, 398 Ill. App. 3d at 1038-39. The defendant insisted that he wanted to represent himself and complained to the point that he was removed from the courtroom. The trial proceeded in the defendant's absence, and the jury found him guilty. *Id.* at 1039-40.

¶ 29　　On appeal, the defendant argued that the trial court abused its discretion when it denied him the right to self-representation. *Id.* at 1040. The Fourth District affirmed, holding that the defendant's motion did not contain an unequivocal assertion that he wanted to proceed *pro se* and that the defendant's request was untimely because it was made on the day of trial and was accompanied by an implicit motion for a continuance. *Id.* at 1041-42. Although the reviewing court noted that such a request is timely if it is not accompanied by a request for additional time to prepare, the defendant "clearly wanted additional time to prepare," as he "complained that he wanted to procure additional documents and call witnesses who were not present the day of trial." *Id.* at 1042. The court agreed that the defendant's request was a delay tactic. Thus, the

court held that the trial court did not abuse its discretion by denying the defendant's untimely request to represent himself. *Id.*

¶ 30 Applying similar reasoning, courts in other jurisdictions have affirmed the denial of a request for a continuance when a defendant sought to proceed *pro se* on the day of trial. For example, in *United States v. Wright*, 682 F.3d 1088 (8th Cir. 2012), the defendant moved to continue the case and to replace his counsel or, in the alternative, to proceed *pro se*. The trial court denied the motion to continue, leaving the defendant to decide whether to go to trial *pro se* or with counsel. The defendant proceeded with counsel and argued on appeal that the trial court abused its discretion in denying his motion to continue because he was forced into choosing either to proceed with undesired counsel or to represent himself with no time to prepare. *Id.* at 1090. The Eighth Circuit affirmed, noting that the predicament was a product of the defendant's own making, as he did not request to proceed *pro se* until the day of trial. The court noted that a request to proceed *pro se* must be timely and that the trial court could have denied the defendant's untimely request outright. *Id.*; see also *State v. Anderson*, 597 P.2d 417, 419 (Wash. Ct. App. 1979) ("If [defendant] truly had believed that his *pro se* defense would be crippled without a continuance, he need not have dismissed his counsel who was fully prepared to try the case.").

¶ 31 Likewise, in *United States v. Ware*, 890 F.2d 1008, 1010 (8th Cir. 1989), the Eighth Circuit affirmed the trial court's denial of a continuance to allow the defendant to prepare after it had granted his motion to proceed *pro se*, as there was no "compelling reason" to merit a continuance. The defendant had known about the upcoming trial for nearly two months, his counsel was prepared to go forward, he was ably assisted by his advisory counsel, and the court and the prosecution advised him of procedure and other trial matters. *Id.*

¶ 32 Here, defendant's request to proceed *pro se* was untimely. Although defendant sought substitute counsel multiple times earlier in the process, he waited until the day of trial to request to proceed *pro se* and seek a continuance for additional time to prepare. The trial court could have denied his request to proceed *pro se* outright, and it cautioned him that the trial was going to move forward that day. Thus, as in *Wright*, defendant's lack of time to prepare was a product of his own making. Further, the trial court allowed defendant to wait until the following day to give an opening statement, and the record shows that defendant was ably assisted by his standby counsel. Thus, *Walker* is distinguishable because, here, defendant's request for a continuance was made in connection with an untimely request to proceed *pro se*. Given the untimely request, the trial court did not abuse its discretion in denying defendant's request for a continuance, and appellate counsel was not ineffective for failing to raise the matter on appeal.

¶ 33 Defendant next argues that the trial court failed to make a required finding that consecutive sentences were necessary for the protection of the public. However, defendant did not raise this issue in his petition. Instead, he argued that the trial court erred in imposing consecutive sentences when the crimes were committed with a toy gun and there were no aggravating circumstances. Claims not raised in a postconviction petition may not be argued for the first time on appeal. *Jones*, 213 Ill. 2d at 505. Accordingly, defendant's argument is forfeited. In any event, as we noted in defendant's direct appeal, the trial court discussed at length the amount of crime in the community, the severity of the offense, and defendant's likelihood to reoffend. In particular, at the hearing on the motion to reconsider the sentence, the trial court specifically stated that it had to consider whether another crime wave was likely to occur.

Thus, the court's comments as a whole show that it made a finding that consecutive sentences were necessary to protect the public.

¶ 34                                    III. CONCLUSION

¶ 35       The trial court did not abuse its discretion when it denied defendant's request for a continuance. Further, defendant's consecutive-sentence argument is forfeited and nevertheless lacks merit. Thus, the trial court properly summarily dismissed the postconviction petition. Accordingly, the judgment of the circuit court of Winnebago County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 36       Affirmed.